# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RONALD J. PERSIN, Derivatively on Behalf of Nominal Defendant REVOLUTION LIGHTING TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT V. LAPENTA, JAMES A. DEPALMA, WILLIAM D. INGRAM, DENNIS MCCARTHY, STEVEN G. VIRTUE, CHARLES J. SCHAFER, ROBERT A. BASIL, JR., and ROBERT V. LAPENTA, JR., <br><br> Defendants, <br><br> and <br><br> REVOLUTION LIGHTING TECHNOLOGIES, INC., <br><br> Nominal Defendant. | Case No. |

## <u>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT</u>

Plaintiff Ronald J. Persin ("Plaintiff"), by and through his undersigned attorneys, brings this

derivative complaint for the benefit of nominal defendant, Revolution Lighting Technologies, Inc.

("Revolution Lighting" or the "Company"), against certain members of its Board of Directors (the

"Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary

duties, unjust enrichment, waste, and violations of § 14 of the Securities Exchange Act of 1934.

Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and

upon information and belief, developed from the investigation and analysis by Plaintiff's counsel,

including a review of publicly available information, including filings by Revolution Lighting with

the United States Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## NATURE AND SUMMARY OF THE ACTION

1.      Revolution Lighting designs, manufactures, markets, and sells light-emitting diode ("LED") lighting solutions for industrial, commercial, and government markets.

2.      In September 2012, the Company entered into an investment agreement with RVL 1 LLC ("RVL"), an affiliate of Aston Capital, LLC ("Aston"), whereby RVL acquired 73% of the Company's outstanding voting stock for $6 million. Robert V. LaPenta ("LaPenta"), founder and Chief Executive Officer ("CEO") of Aston, became CEO of Revolution Lighting and installed new directors to the Board, including James A. DePalma ("DePalma"), Senior Managing Partner of Aston.

3.      After a series of acquisitions, the Company engaged in aggressive revenue recognition practices. According to a former employee, beginning  late 2014, senior executives were directed to engage in "bill-and-hold" transactions, or pre-billing, to boost revenue so that initial purchase orders were booked as revenue even though the underlying projects had not been finalized and the product had not been delivered. Moreover, according to the former employee, customers were offered discounts to commit to the pre-billing practice, but they could change their order before delivery. As a result, the Company accumulated inventory and leased additional space when its main warehouse was overflowing with inventory. LaPenta and DePalma were aware of and encouraged such practices to "bring [the Company's] numbers up."

4.      Between 2014 and 2018, the Company recognized revenue for transactions for which product had not been delivered, thus issuing misleading financial statements.

2

5.      Counsel for Plaintiff obtained records, including photos of stacked inventory, pursuant to the Freedom of Information Act ("FOIA") from the Occupational Safety and Health Administration ("OSHA") of the U.S. Department of Labor. These records corroborate the former employee's account of the excessive inventory resulting from the Company's improper bill-and-hold accounting.

6.      The truth began to emerge in a series of partial disclosures. On August 2, 2018, the Company announced $36.5 million revenue for second quarter 2018, which fell below expectations, reportedly to due project delays.

7.      On this news, the Company's share price fell $0.53 per share, or nearly 14%, to close at $3.37 per share on August 2, 2018, on unusually high trading volume. The Company's shares continued to decline over the course of the next two trading sessions, dropping $0.33 per share on August 3, 2018 and $0.22 per share on August 6, 2018. The total decline over the course of these two trading sessions was $0.55, or 18%.

8.      On August 13, 2018, the Company reported a material weakness related to proper identification of certain collection patterns and review of executed contracts related to bill and hold arrangements.

9.      On October 17, 2018, the Company reported $33 million revenue for third quarter 2018, compared to previously announced guidance of $40-$41 million, as well as LaPenta's offer to take the Company private for $2.00 per share.

10.      On this news, the Company's stock price fell $0.98 per share, or over 38%, to close at $1.58 per share on October 17, 2018, on unusually heavy trading volume.

11.      On October 19, 2018, the Company revealed an ongoing SEC investigation into the Company's revenue recognition practices, including bill and hold transactions that occurred

between 2014 and second quarter of 2018. The Company also disclosed the reduction in reported revenue if the Company had properly recognized revenue based on shipment of products rather than bill-and-hold transactions.

12.     On this news, the Company's stock price fell $0.16 per share, or over 10%, to close at $1.43 per share on October 22, 2018, on unusually heavy trading volume.

13.     These revelations precipitated the filing of securities class actions in the U.S. District Court for the Southern District of New York against Revolution Lighting and certain of defendants: *Glavan v. Revolution Lighting Technologies, Inc., et al.*, 1:19-cv-00980; *Hubner v. Revolution Lighting Technologies, Inc., et al.*, 1:19-cv-02308; *Bishop v. Revolution Lighting Technologies, Inc., et al.*, 1:19-cv-2722 (collectively, the "Securities Class Actions").

14.     Plaintiff did not make a litigation demand prior to filing this action because such demand would have been futile based upon the composition of the Board and the actions taken by the Board. The Board is currently composed of five members, all of whom are named in this action. As alleged herein, two directors, LaPenta and DePalma, engaged in conduct demonstrating knowledge of the revenue recognition practices. The three remaining directors were appointed when RVL acquired a controlling stake in the Company, and thus, they are beholden to LaPenta and DePalma. Thus, more than half the members of the Board would be interested in a demand to investigate their own wrongdoing.

15.     At least half of Revolution Lighting's current Board is not disinterested and independent and/or faces a substantial likelihood of liability in connection with the wrongdoing detailed herein.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Section 14(a) of the Securities Exchange Act of 1934.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

17.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

## PARTIES

**Plaintiff**

18.     Plaintiff Ronald J. Persin purchased 65,000 shares of Revolution Lighting stock in May 2013 and has continuously owned Revolution Lighting stock since that date.

**Nominal Defendant**

19.     Nominal Defendant Revolution Lighting is a Delaware corporation with its principal executive offices located at 177 Broad Street, 12th Floor, Stamford, Connecticut 06901. The Company stock trades on the NASDAQ exchange under the symbol "RVLT."

**Defendants**

20.     Defendant Robert V. LaPenta ("LaPenta") has served as the Company's Chief Executive Officer and Chairman of the Board of Directors

21.     Defendant James A. DePalma ("DePalma") has served as a director of the Company since September 2012 and as Chief Financial Officer ("CFO") since July 2015.

22.    Defendant William D. Ingram ("Ingram") has served as a director of the Company since September 2012. Defendant Ingram is a member of the Audit Committee and of the Governance and Nominating Committee. Defendant Ingram is Chair of the Compensation Committee.

23.    Defendant Dennis McCarthy ("McCarthy") has served as a director of the Company since September 2012. Defendant McCarthy is a member of the Compensation Committee and of the Governance and Nominating Committee. Defendant McCarthy is Chair of the Audit Committee.

24.    Defendant Stephen G. Virtue ("Virtue") has served as a director of the Company since September 2012. Defendant Virtue is a member of the Audit and Compensation Committees. Defendant Virtue is Chair of the Governance and Nominating Committee.

25.    Defendant Charles J. Schafer ("Schafer") served as a director of the Company and as CFO from January 29, 2013 to July 10, 2015.

26.    Defendant Robert A. Basil, Jr. ("Basil") served as a director of the Company from September 2012 to May 2017.

27.    Defendant Robert V. LaPenta, Jr. ("LaPenta, Jr.") served as a director of the Company from September 2012 to May 2017.

28.    The defendants named in ¶¶20-27 are sometimes referred to hereinafter as the "Individual Defendants."

**DUTIES OF THE INDIVIDUAL DEFENDANTS**

29.    By reason of their positions as officers, directors, and/or fiduciaries of Revolution Lighting and because of their ability to control the business and corporate affairs of Revolution Lighting, at all relevant times, the Individual Defendants owed Revolution Lighting and its

shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Revolution Lighting in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of Revolution Lighting and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Revolution Lighting and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

30.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Revolution Lighting, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Revolution Lighting, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

31.     To discharge their duties, the officers and directors of Revolution Lighting were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of Revolution Lighting were required to, among other things:

(a)     Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b)     Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c)     Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d)   When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## SUBSTANTIVE ALLEGATIONS

**Background**

32.     Until 2012, the Company's sole subsidiary was Lumificient. Beginning September 2012, the Company underwent a series of major changes. *First*, on September 12, 2012, the Company entered into an investment agreement with RVL whereby RVL acquired 73% of the Company's outstanding voting stock for $6 million. *Second,* Defendant LaPenta was installed as CEO and Chairman of the Board, and the entire Board was replaced with defendants DePalma, Ingram, McCarthy, Virtue, Basil, and LaPenta, Jr.

33.     *Third*, the Company acquired several entities to expand its business: Seesmart Technologies, Inc. (December 2012); Relume Technologies, Inc. ("Relume") (August 2013); Tri-State DE LLC (November 2013); Value Lighting, Inc. ("Value Lighting") (April 2014); All-Around Lighting, Inc. (December 2014); DPI Management, Inc. d/b/a E Lighting (February 2015); Energy Source, LLC (August 2015); and TNT Energy, LLC (May 2016).

**Confidential Witness**

34.     A reliable former employee provides a firsthand account of the Officer Defendants' knowledge of the improper revenue recognition practices. Confidential Witness ("CW") sold his company to Revolution Lighting in early 2014 and began a senior position with the Company. His role was to provide sourcing for Value Lighting by importing materials from China and designing products. He reported directly to defendant DePalma, interacting by phone and email, and met him during semiannual meetings: once a year in Connecticut with all divisions, and once a year in Atlanta with a smaller group.

35.     In 2014, CW was at a meeting in Wisconsin where he learned that Relume was "having problems." According to the former owner of Relume, the Company made Relume ship product, take it back later, and write a credit to the distributor. Some distributors never received the credit.

36.     In late 2014, CW was told by an accountant that his division needed to pre-bill customers before delivery or payment because the division needed to "bring its numbers up." CW refused to do so. According to CW, an accountant ensured that defendant DePalma authorized pre-billing before the accountant asked senior executives to engage in the practice. CW was informed that the Company only planned to pre-bill for one quarter. Instead, pre-billing continued through 2015 and into 2016.

37.     According to CW, the Company, rather than the customer, initiated the pre-bill arrangements and offered 5 to 10% discount in exchange for customers' commitment to pre-bill. Customers were pre-billed well in advance of the final purchase order, at least a year before the customers finalized their project specifications. As a result, if customers changed their specifications, they could do so without any consequence. The Company bore the risk of loss if the customers' needs changed. Sales representatives were paid on collection, so they only received commission when payment was received from the customer.

38.     These aggressive practices to inflate revenue led to inventory storage problems. According to CW, if a customer's order changed from the initial purchase order that was pre-billed, the Company would source the new materials but would still have the materials for the old order. The Company would sometimes use materials from one order to fill another and scramble to replace the materials on time. Inventory started piling up, and the Company's main warehouse became overfull with inventory stacked beyond legal limits, leading to a regulatory fine between

$25,000 to $50,000. The Company leased additional warehouse spaces to accommodate the growing inventory and hired additional workers; still, it was not well-organized, and it was time-consuming to locate and move materials between warehouses.

39.     According to CW, the Company's accounts receivable increased but cash decreased as the Revolution Lighting paid for excess inventory, its storage, and additional materials as customers' orders changed.

40.     In the summer of 2017, CW attended a meeting in Atlanta, Georgia with defendants LaPenta and DePalma, as well as the heads of Value Lighting and the heads of the Sales Departments. The focus of the meeting was division performance and pre-billing. According to CW, the message from corporate was to "get your numbers up, or you're gone." Heads of Sales stated that they reported potential sales that had not closed to drive up their numbers. When CW mentioned that he had never pre-billed when he owned his company, defendant LaPenta reportedly replied that they did not need numbers before like they did now.

**CW's Account is Corroborated by Information Obtained Pursuant to a FOIA Request**

41.     Counsel for Plaintiff obtained records, including photos, pursuant to FOIA from OSHA. These records corroborate CW's account of the excessive inventory resulting from the Company's improper bill-and-hold accounting.

42.     On February 24, 2017, OSHA penalized the Company for certain violations observed during an inspection of the Company's warehouse in Carrollton, Texas on November 16, 2016. OSHA inspectors found that employees "climb[] the ends of the racking system to bring down products" and that "material stored in tiers was not stacked, blocked, interlocked or limited in height so that it was stable." Inventory had been stored approximately 14-feet high. Employees reported that they "climb the racks daily," "have made a game of climbing," and "have to play Superman and Mario Brothers by jumping skid to skid, double stacks to retrieve products."

43.     According to the OSHA documents, "the employer . . . is aware that product is overstocked." On or about March 6, 2017, the Company paid $20,534.40 to settle the violations.

**The Individual Defendants Cause the Company to Issue Misleading Statements**

44.     On March 14, 2014, the Individual Defendants caused the Company to file its annual report on Form 10-K for the period ended December 31, 2013 (the "2013 10-K"). It reported revenue of $26.06 million. Regarding the Company's revenue recognition policy, the 2013 10-K stated:

> We recognize revenue for our products upon shipment or delivery to customers in accordance with the respective contractual arrangements, provided no significant obligations remain and collection is probable. For sales that include customer acceptance terms, revenue is recorded after customer acceptance. It is our policy that all sales are final. Requests for returns are reviewed on a case by case basis. As revenue is recorded, we accrue an estimated amount for product returns as a reduction of revenue.

45.     The 2013 10-K contained certifications by defendants LaPenta and Schafer to attest that the financial information contained therein was accurate and that it disclosed any material changes to the Company's internal controls over financial reporting.

46.     However, the 2013 10-K disclaimed any assessment of the internal controls with respect to Relume. The report stated, in relevant part:

> In conducting the Company's evaluation of the effectiveness of its internal control over financial reporting, management determined that the internal control systems of Relume Technologies, Inc. and Tri-State DE LLC, wholly owned subsidiaries acquired on August 22, 2013 and November 15, 2013, respectively, would be excluded from its internal control assessment, as permitted by guidance issued by the Securities and Exchange Commission. Accordingly, as of and for the year ended December 31, 2013, internal control systems underlying to approximately 24% of consolidated revenues and 14% of consolidated assets have been excluded from management's evaluation of internal control over financial reporting.

47.     On May 12, 2014, the Individual Defendants caused the Company to file its quarterly report on Form 10-Q for the period ended March 31, 2014 (the "1Q14 10-Q") and reported revenue of $4.95 million.

48.     The 1Q14 10-Q contained certifications by defendants LaPenta and Schafer to attest that the financial information contained therein was accurate and that it disclosed any material changes to the Company's internal controls over financial reporting. Moreover, the report stated that "[t]here was no change in [the Company's] internal controls over financial reporting that occurred during the quarter ended March 31, 2014 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting."

49.     On August 7, 2014, the Individual Defendants caused the Company to file its quarterly report on Form 10-Q for the period ended June 30, 2014 (the "2Q14 10-Q") and reported revenue of $17.52 million.

50.     The 2Q14 10-Q contained certifications by defendants LaPenta and Schafer to attest that the financial information contained therein was accurate and that it disclosed any material changes to the Company's internal controls over financial reporting. Under the heading "Controls and Procedures," the report stated, in relevant part:

> During the second quarter of 2014, the Company implemented new accounting systems and related modifications of processes and controls at its Relume and Lumificient subsidiaries. The Company also hired Directors of Finance at its Relume, Seesmart and newly acquired Value Lighting subsidiaries and expanded its accounting resources at its corporate headquarters and Value Lighting subsidiaries.

51.     On November 6, 2014, the Individual Defendants caused the Company to file its quarterly report on Form 10-Q for the period ended September 30, 2014 (the+

52.     "3Q14 10-Q") and reported revenue of $26.88 million.

53.     The 3Q14 10-Q contained certifications by defendants LaPenta and Schafer to attest that the financial information contained therein was accurate and that it disclosed any material changes to the Company's internal controls over financial reporting. Moreover, the report stated that "[t]here was no change in [the Company's] internal controls over financial reporting that

occurred during the quarter ended September 30, 2014 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting."

54.     On March 16, 2015, the Individual Defendants caused the Company to file its annual report on Form 10-K for the period ended December 31, 2014 (the "2014 10-K"). For 2014, the Company reported revenue of $76.85 million.

55.     The 2014 10-K contained certifications by defendants LaPenta and Schafer to attest that the financial information contained therein was accurate and that it disclosed any material changes to the Company's internal controls over financial reporting.

56.     However, the 2014 10-K disclaimed any assessment of the internal controls with respect to Value Lighting. The report stated, in relevant part:

> In conducting the Company's evaluation of the effectiveness of its internal control over financial reporting, management determined that the internal control systems of Value Lighting and All Around, wholly-owned subsidiaries acquired on April 17, 2014 and December 18, 2014, respectively, would be excluded from its internal control assessment, as permitted by guidance issued by the Securities and Exchange Commission. Accordingly, as of and for the year ended December 31, 2014, internal control systems underlying to approximately 60% of consolidated revenues and 24% of consolidated assets (excluding goodwill and identifiable intangible assets), have been excluded from management's evaluation of internal control over financial reporting.

57.     On November 5, 2015, the Individual Defendants, other than defendant Schafer, caused the Company to file its quarterly report on Form 10-Q for the period ended September 30, 2015 (the "3Q15 10-Q"). This report contained certifications by defendants LaPenta and DePalma to attest that the financial information contained therein was accurate and that it disclosed any material changes to the Company's internal controls over financial reporting.

58.     The 3Q15 10-Q reported revenue of $37.73 million for the quarter. It also disclosed a different revenue recognition policy than in prior period disclosures. The 3Q15 10-Q stated, in relevant part:

The Company recognizes revenue for its products upon shipment or delivery to customers in accordance with the respective contractual arrangements, provided no significant obligations remain and collection is probable. For sales that include customer acceptance terms, revenue is recorded after customer acceptance. It is the Company's policy that all sales are final. Requests for returns are reviewed on a case-by-case basis. As revenue is recorded, the Company accrues an estimated amount for product returns as a reduction of revenue.

The Company recognizes revenue from fixed-price and modified fixed-price contracts for turnkey energy conservation projects using the percentage-of-completion method of accounting. The percentage-of-completion is computed by dividing the actual incurred cost to date by the most recent estimated total cost to complete the project. The computed percentage is applied to the expected revenue for the project to calculate the contract revenue to be recognized in the current period. This method is used because management considers total cost to be the best available measure of progress on these contracts. Contract costs include all direct material and labor costs and indirect costs related to contract performance. Provisions for estimated losses on uncompleted contracts are made in the period in which such losses are determined.

59.    On March 10, 2016, the Individual Defendants, other than defendant Schafer, caused the Company to file its annual report on Form 10-K for the period ended December 31, 2015 (the "2015 10-K"). The 2015 10-K reported revenue of $129.66 million. This report contained certifications by defendants LaPenta and DePalma to attest that the financial information contained therein was accurate and that it disclosed any material changes to the Company's internal controls over financial reporting.

60.    On March 9, 2017, the Individual Defendants, other than defendant Schafer, caused the Company to file its annual report on Form 10-K for the period ended December 31, 2016 (the "2016 10-K"). The 2016 10-K reported revenue of $172.12 million. This report contained certifications by defendants LaPenta and DePalma to attest that the financial information contained therein was accurate and that it disclosed any material changes to the Company's internal controls over financial reporting.

61.    The above statements identified in ¶¶44-59 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and

prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company engaged in bill-and-hold transactions designed to inflate revenue; (2) that, as a result, the Company's financial statements were misstated; (3) that the Company lacked adequate internal controls over financial reporting; (4) that, as a result, Company would be subject to increased regulatory scrutiny and incur substantial costs; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects and prospects were materially misleading and/or lacked a reasonable basis.

62.    On March 23, 2017, defendants LaPenta, DePalma, Ingram, McCarthy, Virtue, Basil, and LaPenta Jr. issued a definitive proxy statement soliciting stockholder votes in advance of the Company's annual meeting to be held May 2, 2017. In the proxy statement, these seven defendants soliciting stockholder votes in favor of four management proposals including a proposal to elect LaPenta, DePalma, Ingram, McCarthy, and Virtue to new terms as directors.

63.    The 2017 proxy statement disclosed that the Board had determined that defendants LaPenta and DePalma were not independent directors. Regarding corporate governance, the proxy statement stated that "the directors keep themselves informed through discussions with our Chairman of the Board, Chief Executive Officer and President, our Chief Financial Officer, other key employees and our principal external advisors (legal counsel, independent auditors and other consultants), by reading reports and other materials that we send to them and by participating in Board and committee meetings." According to the proxy statement, the Board maintained an Audit Committee tasked with oversight of, among other things, the integrity of the Company's financial statements:

**Audit Committee**

The primary responsibilities of the Audit Committee are to oversee the accounting and financial reporting processes of the Company. The Audit Committee also assists the Board of Directors in fulfilling its oversight responsibilities by reviewing

the financial information that is provided to stockholders and others, and the system of internal controls which management and the Board of Directors have established. The Audit Committee oversees the independent registered public accounting firm, including their independence and objectivity. However, the committee members are not acting as professional accountants or auditors, and their functions are not intended to duplicate or substitute for the activities of management and our independent registered public accounting firm. The Audit Committee is empowered to retain independent legal counsel and other advisors as it deems necessary or appropriate to assist the Audit Committee in fulfilling its responsibilities, and to approve the fees and other retention terms of the advisors.

64.    The 2017 proxy statement was materially misleading because it concealed the bill-and-hold procedures undertaken to inflate the Company's revenue and misrepresented the Board's actual activities with respect to risk management while soliciting votes to reelect and compensate directors who were breaching their fiduciary duties. A reasonable shareholder would have found the truth to be material when deciding to vote for or against these proposals.

65.    On May 5, 2017, the Company filed with the SEC a Form 8-K disclosing the results from the votes on the proposals contained in the 2017 proxy statement. In particular, LaPenta, DePalma, Ingram, McCarthy, and Virtue were reelected to terms as directors. The reelection of LaPenta, DePalma, Ingram, McCarthy, and Virtue based on the misleading statements contained in the 2017 proxy statement and other public filings was a fundamental link in these directors' continued breaches of fiduciary duties and the continued enrichment of at the expense of the Company's unaffiliated stockholders.

**The Truth Begins to Emerge**

66.    On September 22, 2017, defendants LaPenta, DePalma, Ingram, McCarthy, and Virtue caused the Company to issue a press release reducing the Company's full year guidance due in part to "slippage of a number of Energy Source division projects." However, the Individual Defendants falsely assured investors that the "negative impact is short term and we expect to begin seeing a recovery in the fourth quarter and into 2018."

As a result of recent hurricane activity in Texas and the south east impacting our multifamily lighting revenue, and the slippage of a number of our Energy Source division projects from the third quarter to the fourth quarter, our third quarter results will be negatively impacted.

As a result of the above, we expect third quarter revenue of approximately $42 - 44 million versus our previous guidance of $52 - 55 million. We expect EBITDA in the 5-6% range.

Revolution Lighting expects revenue in the fourth quarter in the $60 - 65 million range representing a 50% increase over the third quarter and resulting in revenue for the full year in the range of $180 - 185 million verses prior guidance of $195 - 205 million.

We currently forecast EBITDA in the 8% range with positive cash flow for the year.

We are disappointed that the recent catastrophic events have negatively impacted our results, and like all of us, we feel and pray for all those who have been affected.

We believe this negative impact is short-term and we expect to begin seeing a recovery in the fourth quarter and into 2018.

67.     On this news, the Company's share price fell $1.32, over 17%, to close at $6.26 per share on September 22, 2017.

**Defendants LaPenta, DePalma, Ingram, McCarthy, and Virtue Continue to Issue Misleading Statements**

68.     On March 8, 2018, defendants LaPenta, DePalma, Ingram, McCarthy, and Virtue caused the Company to file its annual report on Form 10-K for the period ended December 31, 2016 (the "2016 10-K"). The 2017 10-K reported revenue of $152.31 million and stated that "management concluded that [the Company's] disclosure controls and procedures were effective at a reasonable assurance level as of the end of the period covered by the report." This report contained certifications by defendants LaPenta and DePalma to attest that the financial information contained therein was accurate and that it disclosed any material changes to the Company's internal controls over financial reporting.

17

69.     On March 22, 2018, defendants LaPenta, DePalma, Ingram, McCarthy, and Virtue issued a definitive proxy statement soliciting stockholder votes in advance of the Company's annual meeting to be held May 1, 2018. In the proxy statement, these five defendants soliciting stockholder votes in favor of three management proposals including a proposal to elect LaPenta, DePalma, Ingram, McCarthy, and Virtue to new terms as directors.

70.     The 2018 proxy statement disclosed that the Board had determined that defendants LaPenta and DePalma were not independent directors. Regarding corporate governance, the proxy statement stated that "the directors keep themselves informed through discussions with our Chairman of the Board, Chief Executive Officer and President, our Chief Financial Officer, other key employees and our principal external advisors (legal counsel, independent auditors and other consultants), by reading reports and other materials that we send to them and by participating in Board and committee meetings." According to the proxy statement, the Board maintained an Audit Committee tasked with oversight of, among other things, the integrity of the Company's financial statements:

**Audit Committee**

The primary responsibilities of the Audit Committee are to oversee the accounting and financial reporting processes of the Company. The Audit Committee also assists the Board of Directors in fulfilling its oversight responsibilities by reviewing the financial information that is provided to stockholders and others, and the system of internal controls which management and the Board of Directors have established. The Audit Committee oversees the independent registered public accounting firm, including their independence and objectivity. However, the committee members are not acting as professional accountants or auditors, and their functions are not intended to duplicate or substitute for the activities of management and our independent registered public accounting firm. The Audit Committee is empowered to retain independent legal counsel and other advisors as it deems necessary or appropriate to assist the Audit Committee in fulfilling its responsibilities, and to approve the fees and other retention terms of the advisors.

71.     The 2018 proxy statement was materially misleading because it concealed the bill-and-hold procedures undertaken to inflate the Company's revenue and misrepresented the Board's

actual activities with respect to risk management while soliciting votes to reelect and compensate directors who were breaching their fiduciary duties. A reasonable shareholder would have found the truth to be material when deciding to vote for or against these proposals.

72.     On May 1, 2018, defendants LaPenta, DePalma, Ingram, McCarthy, and Virtue caused the Company to file its quarterly report on Form 10-Q for the period ended March 31, 2018 (the "1Q18 10-Q"), which reported revenue of $33.74 million. The report maintained that the Company's disclosure controls were effective. It also disclosed revisions to the Company's revenue recognition standard, stating in relevant part:

> Beginning January 1, 2018, we implemented ASC 606, "*Revenue from Contracts with Customers.*" Although the new revenue standard had an immaterial impact on our ongoing net income, we did implement changes to our processes related to revenue recognition and the control activities within them. These included the development of new policies based on the five-step model provided in the new revenue standard, new training, ongoing contract review requirements, and gathering of information provided for disclosures.

73.     On May 4, 2018, the Company filed with the SEC a Form 8-K disclosing the results from the votes on the proposals contained in the 2018 proxy statement. In particular, LaPenta, DePalma, Ingram, McCarthy, and Virtue were reelected to terms as directors. The reelection of LaPenta, DePalma, Ingram, McCarthy, and Virtue based on the misleading statements contained in the 2018 proxy statement and other public filings was a fundamental link in these directors' continued breaches of fiduciary duties and the continued enrichment of at the expense of the Company's unaffiliated stockholders.

74.     On August 2, 2018, defendants LaPenta, DePalma, Ingram, McCarthy, and Virtue caused the Company to announce $36.5 million revenue for second quarter 2018, which fell below expectations, reportedly to due project delays. Defendant LaPenta assured that the Company's performance would improve, stating in the press release:

"I am extremely pleased with the progress over the past several quarters in right sizing our company, improving our operational processes and strengthening our sales and marketing resources. In addition, we continue to balance our portfolio of products and solutions to meet and exceed the needs of our expanding customer base," said Robert V. LaPenta, Chairman, CEO and President of Revolution Lighting Technologies. "While we were below our expectations regarding our second quarter results, we remain excited about the second half of 2018 and beyond. We begin the second half of 2018 with our largest backlog of over $50 million and there were a number of large projects where we are the selected lighting provider but the project has slipped to the second half."

75.    On this news, the Company's share price fell $0.53 per share, or nearly 14%, to close at $3.37 per share on August 2, 2018, on unusually high trading volume. The Company's shares continued to decline over the course of the next two trading sessions, dropping $0.33 per share on August 3, 2018 and $0.22 per share on August 6, 2018. The total decline over the course of these two trading sessions was $0.55, or 18%.

76.    The above statements identified in ¶¶67, 71, 73 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company engaged in bill-and-hold transactions designed to inflate revenue; (2) that, as a result, the Company's financial statements were misstated; (3) that the Company lacked adequate internal controls over financial reporting; (4) that, as a result, Company would be subject to increased regulatory scrutiny and incur substantial costs; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects and prospects were materially misleading and/or lacked a reasonable basis.

**The Truth Fully Emerges**

77.    On August 13, 2018, defendants LaPenta, DePalma, Ingram, McCarthy, and Virtue caused the Company to file its quarterly report on Form 10-Q for the period ended June 30, 2018

(the "2Q18 10-Q") and reported revenue of $36.44 million. The 2Q18 10-Q reported a material weakness in the Company's financial reporting. Under the heading "Controls and Procedures," the Company stated, in relevant part:

> As of December 31, 2017, our management conducted an evaluation of our internal control over financial reporting and determined that our internal control over financial reporting was effective. At such date we identified a significant deficiency related to the controls over the proper identification of certain collection patterns relevant for bill and hold revenue recognition. Since December 31, 2017, our management has implemented changes in internal control over financial reporting to address this significant deficiency, including changing the design of existing controls and implementing additional transaction level and review controls. In addition, corporate management is strengthening the internal accounting functions at the divisional or subsidiary level, where appropriate.
>
> At June 30, 2018, we have determined that certain of the transaction level and review controls over revenue recognition have not operated effectively. Specifically, our management has identified control deficiencies related to the proper identification of certain collection patterns and the finalization and review of executed contracts related to bill and hold arrangements and controls over the recording of material costs. We have determined that these control deficiencies aggregate to a material weakness at June 30, 2018.

78.     On October 17, 2018, defendants LaPenta, DePalma, Ingram, McCarthy, and Virtue caused the Company to report preliminary financial results for third quarter 2018 with revenue expected to be $33 million, compared to previously-announced guidance of $40-$41 million. The Company also announced that its CEO had offered to acquire all of the common stock of the Company for a price of $2.00 per share. In a press release, the Company stated, in relevant part:

> While the company has been successful in winning a number of important projects, it continues to experience delays in starting and or shipping against these projects particularly at our multifamily and Tri-State divisions. As a result, we expect revenue of approximately $33 million for the third quarter versus prior third quarter guidance of $40-$41 million. Due to the decline in expected third quarter revenue and our current outlook for the fourth quarter, total revenue for the full year 2018 is expected to approximate $140-$145 million versus our previous full year guidance of $160-$170 million.

We are disappointed in our results and recognize that we need to address our overall business structure, reduce operating costs to a level more aligned with our revenue expectations and address our level of outstanding debt. Over the past six months, our CEO and Chairman, Robert LaPenta, has provided approximately $15 million of capital to fund operations, bringing our total debt, including bank financing, to over $60 million. Mr. LaPenta believes additional capital requirements cannot presently be addressed through third party financing.

Mr. LaPenta has proposed to acquire all of the common stock of the Company that he and his affiliates do not currently own. The text of Mr. LaPenta's letter to the Company's independent directors appears in full below:

> We write to you in connection with your roles as independent, disinterested members of the Board of Directors . . .
>
> * * *
>
> Without additional funding, we believe that the Company may be forced to consider various restructuring alternatives in the near term.
>
> Simply put, we do not believe that it is in the best interests of the Company and its stockholders to continue as a publicly traded enterprise, as we believe it currently lacks sufficient scale and the ongoing costs of maintaining the reporting and related infrastructure necessary for public reporting are a significant financial burden on the Company. In addition, we believe the constant pressure to meet quarterly earnings targets has been a significant distraction to the Company's management and has prevented management from appropriately focusing on the long term growth and the development of the Company's business.
>
> **As a result of the above factors, we propose to acquire all of the common stock of the Company that we do not currently own for a price of $2.00 per share.** Given our familiarity with the Company, we would not need to conduct any further due diligence on the Company and would be in a position to sign a definitive transaction agreement quickly.

79.     On this news, the Company's stock price fell $0.98 per share, or over 38%, to close at $1.58 per share on October 17, 2018, on unusually heavy trading volume.

80.     On October 19, 2018, defendants LaPenta, DePalma, Ingram, McCarthy, and Virtue caused the Company to disclose "an ongoing investigation by the SEC regarding certain revenue recognition practices, including bill and hold transactions that occurred between 2014

through the second quarter of 2018." A press release stated the estimated impact on revenue of an

accounting policy "based on shipment of products, as opposed to bill and hold revenue

recognition." The press release stated, in relevant part:

> Management does not believe that revenue reduction described in the release is due
> to any loss or deterioration of the Company's business or from the discontinuation
> of bill and hold transactions that are the subject of an investigation by the Securities
> and Exchange Commission ("SEC"), as described below, but rather resulted from
> the timing of the start and completion of programs during the third quarter at the
> Company's Value and Tristate divisions. These delays, plus a revised more
> conservative outlook regarding the fourth quarter revenue guidance, resulted in the
> reduced outlook for the year.
>
> There is currently an ongoing investigation by the SEC regarding certain revenue
> recognition practices, including bill and hold transactions that occurred between
> 2014 through the second quarter of 2018. The Company estimates that the net
> effect on the reported revenue as a result of, among other things, recording revenue
> based on shipments of products, as opposed to bill and hold revenue recognition
> used by the Company, would have been to reduce revenue by $5.0 million, $6.3
> million and $6.3 million in each of 2014, 2015 and 2016, respectively, and increase
> revenue by $11.6 million and $5.1 million in 2017 and 2018, respectively. In
> connection with the results of the investigation to date, the Company is in the
> process of assessing its revenue recognition policies and the resulting effects on its
> financial results, and adopting remedial measures to improve its internal controls
> as described in its Form 10-Q for the second quarter of 2018. The SEC
> investigation is ongoing and there can be no assurance as to whether additional
> remedial measures will be required. The Company will continue to cooperate with
> the SEC regarding the investigation.

81.     On this news, the Company's stock price fell $0.16 per share, or over 10%, to close

at $1.43 per share on October 22, 2018, on unusually heavy trading volume.

82.     On November 13, 2018, defendants LaPenta, DePalma, Ingram, McCarthy, and

Virtue caused the Company to file a Notice of Late Filing on Form 12b-25 with the SEC due to a

review by the Company's Audit Committee of the previously-filed financial statements. The filing

also provided detail regarding the incorrect recognition of revenue, stating in relevant part:

> Beginning in 2014, the Company used bill and hold revenue accounting principally
> for certain contracts in its Multi-family division between its Value Lighting
> subsidiary and its customers. Upon satisfaction of specific requirements imposed
> by accounting principles and interpretations of the SEC staff, bill and hold revenue

accounting permits a company to record revenue on products segregated for delivery within its own warehouse. Absent satisfaction of these requirements, revenue recognition generally should await delivery of products to customers.

The Company's Audit Committee also is conducting a review to assess the accuracy of the Company's previously filed financial statements, the current focus of which is to review the extent to which the Company incorrectly recognized revenue with respect to bill and hold transactions from 2014 until the second quarter of fiscal 2018, and whether the Company's accounting for those transactions led to material errors in its financial statements. If this ongoing review results in a conclusion that the Company made material errors in its financial statements, the Company would restate the affected financial statements to the extent required. In any such restatement, some revenue recognized in prior periods would be recognized in later periods. While the Audit Committee review is ongoing, the Company will not be able to provide financial statements for the fiscal quarter ended September 30, 2018.

83.     On November 14, 2018, defendants LaPenta, DePalma, Ingram, McCarthy, and

Virtue caused the Company to announce that its Transaction Committee was considering an

updated proposal from Defendant LaPenta to acquire all of the Company's outstanding stock for

$1.50 per share. A press release stated, in relevant part:

> Revolution Lighting Technologies, Inc. (NASDAQ: RVLT) ("Revolution Lighting" or the "Company"), a global provider of advanced LED lighting solutions announced today that on November 14, 2018, the Transaction Committee of the Board of Directors of the Company received a revised proposal from RVL I LLC, an affiliate of the Company's Chairman and CEO, Robert V. LaPenta, to acquire all of the outstanding common stock of the Company. The Transaction Committee is in the process of considering the proposal with assistance from its advisors and will have no comment until its evaluation is complete. The text of the letter to the Transaction Committee of the Company's Board of Directors appears in full below:
>
> > We write in connection with our October 16, 2018 letter (the "Offer Letter") regarding our offer to acquire all of the common stock of Revolution Lighting Technologies, Inc. (the "Company") on behalf of RVL 1, LLC (together with its affiliates and certain related persons, "we" or "us") that we do not own.
> >
> > * * *
> >
> > Over the last month, we have provided the Company with $7.5 million in debt financing, and we may be required to provide up to an additional $7.0 million in debt financing to fund the Company's operations in the ordinary course through the end of 2018. We

further understand that the Company may require additional funding in 2018 in the event of unforeseen circumstances, and we expect the Company to require additional funds to continue its operations beyond 2018, with the extent of such additional required funds depending upon the Company's future results of operation and the amount of time and expense necessary to complete the previously disclosed SEC investigation and the Audit Committee's review of the Company's historical financial statements and other related costs. We intend to continue to fund the Company through continued periodic loans to the extent consistent with what we believe to be the best interests of the Company and its stockholders.

The Company's overall debt as of November 12, 2018 was $65.0 million and, as noted above, will rise further as additional debt financing is provided. This *increased amount of debt, which exceeds the amount that we expected the Company to have at the time of our Offer Letter, as well as an anticipated delay in completing a going private transaction and the developments in the Company's business that it has disclosed, including the SEC investigation and the Audit Committee's review, will necessitate a decrease from the $2.00 per share offer contained in our Offer Letter to a revised offer of $1.50 per share.*

84. On this news, the Company's stock price fell $0.55 per share, or nearly 40%, to close at $0.85 per share on November 15, 2018, on unusually heavy trading volume.

85. On March 8, 2019, defendants LaPenta, DePalma, Ingram, McCarthy, and Virtue caused the Company to issue a press release announcing that Defendant LaPenta and RVL had concluded it was not the right time to pursue the acquisition offer. The press release included the letter withdrawing RVL and Defendant LaPenta's offer, which stated in relevant part, "[w]hile we continue to believe in the desirability of the Company ceasing to continue as a publicly traded enterprise, given the publicly disclosed developments since our Offer Letters, we have reluctantly come to the conclusion that now is not the right time for us to pursue such a going private transaction."

## DAMAGES TO THE COMPANY

86.     As a direct and proximate result of the Individual Defendants' conduct, Revolution Lighting has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

        (a)     Legal fees incurred in connection with the Securities Class Actions;

        (b)     Any funds paid to settle the Securities Class Actions;

        (c)     Costs incurred in connection with the SEC investigation into the Company's revenue recognition practices; and

        (d)     Costs incurred from compensation and benefits paid to the defendants who have breached their duties to Revolution Lighting.

87.     In addition, Revolution Lighting's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired. The Company still has not fully admitted the nature of its false statements and the true condition of its business.  The credibility and motives of management are now in serious doubt.

88.     The actions complained of herein have irreparably damaged Revolution Lighting's corporate image and goodwill.  For at least the foreseeable future, Revolution Lighting will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Revolution Lighting's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

89.     Plaintiff brings this action derivatively in the right and for the benefit of Revolution Lighting to redress injuries suffered, and to be suffered, by Revolution Lighting as a direct result of breaches of fiduciary duty by the Individual Defendants, waste of corporate assets, unjust

enrichment, and violations of Section 14(a) of the Exchange Act. Revolution Lighting is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

90.     Plaintiff will adequately and fairly represent the interests of Revolution Lighting in enforcing and prosecuting its rights.

91.     Plaintiff has continuously been a shareholder of Revolution Lighting at times relevant to the wrongdoing complained of and is a current Revolution Lighting shareholder.

92.     When this action was filed, Revolution Lighting's Board of Directors consisted of director defendants LaPenta, DePalma, Ingram, Virtue, and McCarthy. Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, for the reasons set forth below.

**Defendant LaPenta**

93.     At all relevant times, LaPenta was the Company's CEO and Chairman of the Board. As alleged herein, LaPenta knew and/or directed senior executives within the Company to use bill-and-hold and/or pre-billing procedures to inflate revenue and other financial results. Moreover, LaPenta's own statements misleadingly concealed the aggressive revenue recognition practices, and he was well aware that the Company's public statements did so as well. Due to his statements, LaPenta is a defendant in the Securities Class Actions. As a result, LaPenta would be interested in a demand regarding his own wrongdoing and demand is futile as to him.

94.     Defendant LaPenta is not disinterested because he is primarily employed as CEO and Chairman of Revolution Lighting. As a result, he is an employee of the Company and is not an independent director under the listing standards of the NASDAQ exchange or as defined by the Company. LaPenta is a beneficial owner of more than 42% of the voting power of Revolution

Lighting stock, according to the 2018 proxy statement, and his reputation is inextricably tied to his employment as CEO of the Company. As a result, demand is excused as to LaPenta on this basis as well.

**Defendant DePalma**

95.     DePalma was the Company's CFO during a significant portion of the period during which the alleged wrongdoing occurred. As alleged herein, DePalma directed senior executives within the Company to use bill-and-hold and/or pre-billing procedures to inflate revenue and other financial results. Moreover, DePalma was well aware that the Company's public statements misleadingly concealed the aggressive revenue recognition practices. Due to his statements, DePalma is a defendant in the Securities Class Actions. As a result, DePalma would be interested in a demand regarding his own wrongdoing and demand is futile as to him.

96.     Defendant DePalma is not disinterested because he is primarily employed as CFO of Revolution Lighting. As a result, he is an employee of the Company and is not an independent director under the listing standards of the NASDAQ exchange or as defined by the Company. DePalma is a beneficial owner of more than 39% of the voting power of Revolution Lighting stock, according to the 2018 proxy statement, and his reputation is inextricably tied to his employment as CFO of the Company. As a result, demand is excused as to DePalma on this basis as well.

**Defendants Ingram, McCarthy, and Virtue**

97.     Defendants Ingram, McCarthy, and Virtue were appointed by, and are beholden to, RVL and defendants LaPenta and DePalma. Ingram, McCarthy, and Virtue together with LaPenta and DePalma made the misrepresentations through the public filings they reviewed and signed. Moreover, defendants Ingram, McCarthy, and Virtue served as directors of the Audit Committee at all relevant times. As such, these directors are responsible for the effectiveness of the Company's

internal controls, the integrity of its financial statements, and its compliance with laws and regulations. Defendants Ingram, McCarthy, and Virtue failed to ensure the integrity of the Company's internal controls, allowing the misleading statements to be disseminated in the Company's SEC filings and other disclosures. Thus, defendants Ingram, McCarthy, and Virtue breached their fiduciary duties and are not disinterested, and demand is excused as to them.

<u>COUNT I</u>
**Against All Defendants for Breach of Fiduciary Duty**

98.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

99.     Each Individual Defendant owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Revolution Lighting's business and affairs, particularly with respect to issues as fundamental as public disclosures.

100.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Revolution Lighting.

101.    In breach of their fiduciary duties owed to Revolution Lighting, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

102.    In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report revenue and the Company's overall prospects.

103.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Revolution Lighting has sustained and continues to sustain significant

damages.  Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets.  As a result of the misconduct alleged herein, defendants are liable to the Company

## COUNT II
### Against All Defendants for Unjust Enrichment

104.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

105.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Revolution Lighting.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Revolution Lighting.

106.    Plaintiff, as a stockholder and representative of Revolution Lighting, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

107.    Plaintiff, on behalf of Revolution Lighting, has no adequate remedy at law.

## COUNT III
### Against All Defendants for Violations of Section 14 of the Securities Exchange Act of 1934

108.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

109.    Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange Act of 1934, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein

not false or misleading." 17 C.F.R. §240.14a-9. Specifically, the Company's proxy statement filed on March 23, 2017 and March 22, 2018 violated §14(a) and Rule 14a-9 because they concealed the bill-and-hold procedures undertaken to inflate the Company's revenue and misrepresented the Board's actual activities with respect to risk management while soliciting votes to reelect and compensate directors who were breaching their fiduciary duties.

1.    In the exercise of reasonable care, defendants should have known that the statements contained in the proxy statement were materially false and misleading.

2.    The misrepresentations and omissions in the proxy statement were material to Company shareholders in voting on the proxy statement. The 2017 proxy statement solicited shareholder votes for: (i) director nominees; (ii) ratification of the appointment of the Company's independent auditor; (iii) approval of executive compensation; and (iv) approval of an amendment to the Company's 2013 Stock Incentive Plan. The 2018 proxy statement solicited shareholder votes for: (i) director nominees; (ii) ratification of the appointment of the Company's independent auditor; and (iii) approval of an amendment to the Company's 2013 Stock Incentive Plan. The proxy statement was an essential link in the accomplishment of the continuation of defendants' continued violation of their fiduciary duties.

110.    The Company was damaged as a result of the defendants' material misrepresentations and omissions in the proxy statement.

<u>**COUNT IV**</u>
**Against All Defendants for Waste of Corporate Assets**

111.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

112.    The Individual Defendants knowingly, intentionally, recklessly, or negligently breached their fiduciary duties and, thereby, caused the Company to waste its assets, expend

millions of dollars of corporate funds, and impair its reputation and credibility for no legitimate business purpose, as a result of which Revolution Lighting has been and continues to be substantially damaged.

113.    In light of their deficient performance in supervising controls and financial affairs of the Company, the Individual Defendants have wasted corporate assets by overly compensating themselves and the Company's executives during times when the Company was materially misstating its performance to the investing public.

114.    Accordingly, the Individual Defendants should be required to make the Company whole for such waste.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Revolution Lighting, demands judgment as follows:

A.    Declaring that plaintiff may maintain this action on behalf of Revolution Lighting and that plaintiff is an adequate representative of the Company;

B.    Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C.    Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Revolution Lighting;

D.    Directing Revolution Lighting to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Revolution Lighting and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to

the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

    1.    a proposal to strengthen the Company's controls over financial reporting;

    2.    a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

    3.    a proposal to strengthen Revolution Lighting's oversight of its disclosure procedures;

    4.    a provision to control insider transactions; and

    5.    a provision to permit the stockholders of Revolution Lighting to nominate at least three candidates for election to the Board;

    E.    Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Revolution Lighting has an effective remedy;

    F.    Awarding to Revolution Lighting restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

    G.    Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

    H.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury.

Dated: May 10, 2019                    **SHAPIRO LAW OFFICES, LLC**

                                       By: /s/ Jonathan M. Shapiro
                                       Jonathan M. Shapiro (CT24075)
                                       32 Washington Street
                                       Middletown, CT 06457
                                       Telephone: (860) 347-3325
                                       Facsimile: (860) 347-3874
                                       Email: jshapiro@shapirolawofficesct.com

                                       **GLANCY PRONGAY & MURRAY LLP**
                                       Matthew M. Houston
                                       Benjamin I. Sachs-Michaels
                                       712 Fifth Avenue
                                       New York, New York 10019
                                       Telephone:  (212) 935-7400
                                       E-mail: bsachsmichaels@glancylaw.com

                                       **GLANCY PRONGAY & MURRAY LLP**
                                       Robert V. Prongay
                                       Lesley F. Portnoy
                                       Pavithra Rajesh
                                       1925 Century Park East, Suite 2100
                                       Los Angeles, California 90067
                                       Telephone:  (310) 201-9150
                                       Facsimile:  (310) 210-9160
                                       E-mail: rprongay@glancylaw.com

                                       *Attorneys for Plaintiff Ronald J. Persin*

DocuSign Envelope ID: 4B72D7AD-AE1F-461D-B397-54FC1423F4A5

## <u>REVOLUTION LIGHTING TECHNOLOGIES, INC. VERIFICATION</u>

I, Ronald Persin, hereby verify that I am familiar with the allegations in the Verified Shareholder Derivative Complaint, and that I have authorized the filing of the Verified Shareholder Derivative Complaint Complaint, and that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: 5/7/2019 _____

DocuSigned by:

*Ronald J. Persin*

1EFCB4F6B5A1470...

Ronald Persin